Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001066
31-MAR-2017
02:43 PM

NO. CAAP-14-0001066

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


NATIONAL INTERSTATE INSURANCE COMPANY, INC.,
Plaintiff/Appellee,
v.
SAVIO REINHARDT, WILLIAM CORNELIO, JR.,
Defendants/Appellees,
and
KAWIKA FRANCO, INDIVIDUALLY and AS PERSONAL REPRESENTATIVE FOR
THE ESTATE OF TIARE FRANCO; PEACHES KONG and APPLES ELABAN,
AS NEXT FRIENDS OF LOVELY FRANCO (MINOR); TAUA GLEASON,
AS NEXT FRIEND OF KOLOMANA KONG KANIAUPIO GLEASON and KAULANA
KONG KANIAUPIO GLEASON (MINORS); AND CHERYL RUSSELL,
AS NEXT FRIEND OF JEANNE RUSSELL (MINOR),
Defendants/Intervenors/Appellants.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 13-1-0387(1))

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Reifurth, JJ.)

This appeal arises out of an action for declaratory relief brought by National Interstate Insurance Company, Inc. (NIIC), which sought a judicial determination that there was no potential for insurance coverage and thus no duty to defend or indemnify the driver of an insured vehicle following a fatal car accident. NIIC issued a commercial automobile liability insurance policy (Policy) to William A. Cornelio, Jr., (Cornelio) covering a 2005 Dodge Ram pickup truck (Truck) owned by

Cornelio's ex-wife, Reinette Kama (Kama).[1] On May 14, 2011, Kama's boyfriend, Savio Reinhardt (Reinhardt), was allegedly driving the Truck when he lost control of the Truck, drove over a cliff, and crashed. Tiare Franco (Franco), who was in the Truck, was ejected from the Truck during the accident and died at the scene.

Franco's estate, her spouse, and her four minor children (collectively, the Franco Parties)[2] filed a wrongful death action against Reinhardt, and NIIC retained counsel to defend Reinhardt. NIIC subsequently filed the instant action for declaratory relief against Reinhardt and Cornelio. The Franco Parties were allowed to intervene in the action for declaratory relief.

The Circuit Court of the Second Circuit (Circuit Court)[3] granted NIIC's motion for summary judgment, ruling that NIIC had no potential coverage obligation under its Policy for the Truck and therefore no duty to defend or indemnify Reinhardt or Cornelio. NIIC's summary judgment motion turned on the question of whether Reinhardt had a reasonable belief that he was entitled to operate the Truck when the accident occurred -- if Reinhardt had such a reasonable belief, then he would be an insured covered by the Policy. In granting summary judgment in favor of NIIC, the Circuit Court ruled that there was no genuine issue of material fact that Reinhardt lacked a reasonable belief that he was entitled to operate the Truck at the time the fatal accident occurred. The Circuit Court also denied the Franco

---

[1] Cornelio registered the Truck and he was the named insured under the NIIC Policy. Kama represented that she was the owner of the Truck, and the parties to this appeal do not dispute that at the time of the fatal accident, Kama was the owner of the Truck and that her permission to use the Truck is relevant to the scope of insurance coverage under the NIIC Policy.

[2] The Franco Parties include Kawika Franco, Individually and as Personal Representative for the Estate of Tiare Franco, Peaches Kong and Apples Elaban, as Next Friends of Lovely Franco (Minor); Taua Gleason, as Next Friend of Kolomana Kong Kaniaupio Gleason and Kaulana Kong Kaniaupio Gleason (Minors); and Cheryl Russell, as Next Friend of Jeanne Russell (Minor).

[3] The Honorable Rhonda I.L. Loo presided.

2

Parties' motion for summary judgment that was based on their claim that NIIC was estopped from denying coverage. Although the Circuit Court's exact basis for this denial is unclear, the Circuit Court indicated that it believed the Franco Parties' motion had been rendered moot by its grant of summary judgment in favor of NIIC.

The Franco Parties appeal from the Circuit Court's Judgment in favor of NIIC. On appeal, the Franco Parties argue that the Circuit Court erred in: (1) granting NIIC's motion for summary judgment, because they claim that there were genuine issues of material fact regarding whether Reinhardt had a reasonable belief that he was entitled to operate the Truck at the time of the accident; (2) denying the Franco Parties' motion for reconsideration of the order granting NIIC's motion for summary judgment; (3) denying the Franco Parties' motion for summary judgment as moot without addressing the merits of the motion; (4) failing to set aside the defaults entered against Reinhardt and Cornelio; (5) failing to grant the Franco Parties' motion to compel discovery; and (6) denying the Franco Parties' motion for leave to depose Reinhardt.

As explained below, we hold that the Circuit Court erred in granting NIIC's motion for summary judgment because we conclude that there were genuine issues of material fact regarding whether Reinhardt reasonably believed he was entitled to operate the Truck at the time of the fatal accident. Our decision on this issue makes it unnecessary for us to address the Franco Parties' challenge to the Circuit Court's denial of their motion for reconsideration of the order granting NIIC's motion for summary judgment. We also hold that the Circuit Court did not err in denying the Franco Parties' motion for summary judgment as there were genuine issues of material fact regarding their equitable estoppel claim. With respect to the other issues raised by the Franco Parties on appeal, the Circuit Court's rulings (or failure to rule) appear to have been based upon, or affected by, its decision to grant NIIC's motion for summary

3

judgment. We remand the case without deciding these issues to give the Circuit Court the opportunity to rule on them in light of our decision to vacate its grant of NIIC's motion for summary judgment. Accordingly, we vacate the Circuit Court's Judgment and remand the case for further proceedings consistent with this Memorandum Opinion.

BACKGROUND

I.

At about 1:00 a.m. on May 14, 2011, a police officer saw the Truck being driven on Kahekili Highway without its lights on. The officer activated his blue lights and siren and accelerated in an attempt to catch the Truck. The officer, however, was unable to catch up to the Truck because of its speed and the poor visibility and road conditions, and the officer terminated his pursuit.

A short time later, the driver of the Truck apparently lost control, drove off the roadway, struck a barbed wire cattle fence, went over a cliff, and came to rest down a steep embankment. Franco, an occupant of the Truck, was ejected and died at the scene. Another occupant of the Truck fled the scene.

For purposes of its summary judgment motion, NIIC accepted the Franco Parties' allegation that Reinhardt was driving the Truck when the accident occurred. We similarly assume for purposes of this appeal that Reinhardt was the driver.[4]

At the time of accident, the Truck was insured by NIIC under the Policy issued to Cornelio as the named insured. Cornelio's ex-wife, Kama, was the owner of the Truck during the relevant time period.

---

[4] NIIC asserts that "[i]t is unclear who was driving the vehicle and whether Reinhardt was in the truck as either a driver, passenger, or at all." The Franco Parties, on the other hand, assert that the final police accident report concludes that Reinhardt was the driver based on the investigation conducted by the police, which included witness interviews, polygraph examinations, and "Reinhardt's DNA results." They also presented evidence in the Circuit Court that the police investigation showed that samples of blood-like stains taken from the Truck matched Reinhardt's DNA profile.

4

II.

Reinhardt began working for Kama's landscaping and grounds maintenance business in April 2010. In August 2010, Reinhardt and Kama were involved in boyfriend-girlfriend relationship that continued through the date of the accident. During this relationship, Reinhardt would come over and spend time at Kama's house, and he spent the night on "a couple" of occasions.

On the evening of May 13, 2011, Reinhardt went to Kama's house after work. Later that evening, he left Kama's residence driving her Truck. In an interview with the police on May 14, 2011, following the accident, Kama stated that Reinhardt and his friends left her house between 10:30 and 11:00 p.m. on May 13, 2011, that she did not know where he was going or what he was going to do, and that he did not come home that night.

At a deposition taken on September 21, 2012, in connection with the Franco Parties' wrongful death action against Reinhardt, Kama stated that during the evening of May 13, 2011, Reinhardt was at Kama's house when Reinhardt received phone calls from a person he said was his niece and from Franco. Kama testified as follows:

> A.   . . . And [Reinhardt] said, "I gotta borrow your truck, drop my niece off."
>
> Q.   So you let him borrow your truck?
>
> A.   Yes.
>
> Q.   And your -- you said to drop off his niece?
>
> A.   I said, "What you gonna use it for? 'Cause you dropping her off and that's it, bringing that truck right back."
>
> Q.   Anything else you said to him?
>
> A.   No.

Kama further testified that after Reinhardt left her house with the Truck, she received a call from Reinhardt around midnight:

> A.   It was about midnight. I was sleeping. [Reinhardt] called, said that he was on his way back.

5

. . . .

Q. He was calling to say he was on his way back from where?

A. Wailuku.

Q. Anything else he told you?

A. He was going to stop at his family land to go check on the -- on his other car and he'd be right back.

. . . .

Q. When he told you he was going to come right back, what did you say?

A. "Whatever," and I hung up, went back to sleep.

When interviewed by the police on May 16, 2011, Reinhardt stated that prior to leaving Kama's house on May 13, 2011, he received a call from Franco who was upset because she stated that Reinhardt's niece had stolen money from her. Reinhardt told the police that after he left Kama's house with the Truck, he dropped off his friend at a church, picked up and dropped off another person, and went to meet Franco in Wailuku. According to Reinhardt, after he met Franco and agreed to set up a meeting with his niece, he drove the Truck to his family property where he fell asleep in another vehicle that was parked there. Reinhardt told the police that when he woke up in the morning, the Truck was gone and he called Kama to tell her that the Truck had been stolen. Reinhardt then changed his story and told the police that he let Franco borrow the Truck. Reinhardt claimed that he was not in the Truck at the time of the accident. However, other witnesses interviewed by the police contradicted certain statements made by Reinhardt. In addition, the police report notes that swabs of blood-like stains recovered from the Truck's exterior driver's window frame and interior driver's side door frame matched Reinhardt's DNA profile.

III.

Officer Dawn Danley, the police officer who interviewed Kama just after the accident, testified that Kama said that it was Reinhardt who normally used the Truck and that Reinhardt used

the Truck more than she did. In addition, people who knew Reinhardt signed declarations or testified about Reinhardt's use of the Truck prior to the accident. Clayton Gomes, Jr., stated that he saw Reinhardt drive or use the Truck around ten different times when Reinhardt came to his house or was "cruising around our neighborhood or in the Happy Valley area," and that during these occasions, Reinhardt's "girlfriend" was not in the Truck with Reinhardt and Reinhardt did not appear to be working. Steven Rodrigues testified that Reinhardt began driving the Truck after Reinhardt's own truck broke down and that Reinhardt would be driving the Truck "almost every night that we hung out together." Reinhardt's relative testified that Reinhardt arrived at her house on two occasions driving the Truck.

IV.

The Franco Parties filed a complaint against Reinhardt raising claims of negligence, gross negligence, and/or recklessness (Count 1) and negligent and/or intentional infliction of emotional distress (Count 2) for allegedly causing the May 14, 2011, accident and the death of Franco (the Wrongful Death Action).[5] NIIC assigned a lawyer to defend Reinhardt in that action.

Ten and a half months after the Franco Parties filed the Wrongful Death Action, NIIC filed its action for declaratory relief against Reinhardt and Cornelio (Declaratory Relief Action), seeking a determination that Reinhardt was not covered as an "insured" under the NIIC Policy issued to Cornelio and that NIIC therefore had no duty to defend or indemnify Reinhardt in connection with the Wrongful Death Action. The Franco Parties were subsequently allowed to intervene in the Declaratory Relief Action.

---

[5] The Franco Parties note that "[o]ut of abundance of caution," they later amended their complaint in the Wrongful Death Action to add Josiah Okudara as a defendant. In his statement to the police, Reinhardt indicated that Okudara could have been driving the Truck when the accident occurred.

Shortly before the Franco Parties were allowed to intervene, NIIC requested entry of default, and the Circuit Court clerk entered default, against Reinhardt and Cornelio based on their failure to answer or otherwise defend against the complaint in the Declaratory Relief Action. The record indicates that both Reinhardt and Cornelio were incarcerated during this time. The Franco Parties filed a motion to set aside the entry of defaults against Reinhardt and Cornelio. However, the Circuit Court did not rule on this motion.

NIIC filed a motion for summary judgment on its Declaratory Relief Action. NIIC argued that its Policy restricts coverage to "permitted drivers who had a 'reasonable belief' they were entitled to use the insured vehicle." NIIC asserted that assuming Reinhardt was driving the Truck when the fatal accident occurred, he could not have had a reasonable belief that he was entitled to use the Truck at that time, and accordingly, there was no possibility that Reinhardt could fall within the coverage provided by the Policy.

The Franco Parties filed their own competing motion for summary judgment. The Franco Parties argued that NIIC was equitably estopped from denying coverage for Reinhardt because (1) NIIC accepted and controlled Reinhardt's defense in the Wrongful Death Action without a timely reservation of rights; and (2) NIIC was using information obtained through its defense of Reinhardt to deny coverage.

After a hearing on both motions, the Circuit Court granted NIIC's motion for summary judgment, ruling that NIIC had no duty to defend and/or indemnify Reinhardt under the Policy. The Circuit Court found that under the particular circumstances presented, Reinhardt could not have had a reasonable belief that he was entitled to operate the Truck at the time of the accident and that there were no genuine issues of material fact concerning this issue.

The Circuit Court also denied the Franco Parties' motion for summary judgment, indicating that its granting of

8

NIIC's motion for summary judgment had rendered the Franco Parties' motion moot. The Circuit Court stated:

> The Court having had an opportunity to review the [Franco Parties'] motion, the opposition, the reply, and having heard the oral arguments in Court this morning, in light of the Court's granting of plaintiff NIIC's motion for summary judgment, the Court is going to deny this motion.
>
> The Court finds at this time that this motion as well is moot. The instant motion essentially requests for the Court to rule that [NIIC] be estopped from denying coverage for Reinhardt's liability for defendant intervenor's compensatory bodily injury damages for the subject motor vehicle collision.
>
> During the prior hearing on the motion for summary judgment, the Court did rule that NIIC's policy did not cover Reinhardt because the Court determined that Reinhardt could not have a reasonable belief to go joyriding with Franco under the particular circumstances at issue.
>
> I'm going to ask [NIIC's counsel] to prepare the order on this matter as well.

After the Circuit Court entered its written orders granting NIIC's motion for summary judgment and denying the Franco Parties' motion for summary judgment, the Franco Parties filed: (1) a motion for leave to take Reinhardt's deposition (Motion to Depose Reinhardt); (2) a motion for reconsideration of the order granting NIIC's motion for summary judgment and/or for a Hawai'i Rules of Civil Procedure (HRCP) Rule 56(f) continuance (Motion for Reconsideration); and (3) a motion to compel NIIC to produce documents and information responsive to the Franco Parties' discovery requests (Motion to Compel Discovery). The Circuit Court denied the Franco Parties' Motion to Depose Reinhardt and their Motion for Reconsideration. The Circuit Court did not rule on the Franco Parties' Motion to Compel Discovery.

On July 28, 2014, the Circuit Court filed its Judgment pursuant to its orders granting NIIC'S motion for summary judgment and denying the Franco Parties' Motion for Reconsideration. The Circuit Court entered judgment in favor of NIIC and against Reinhardt, Cornelio, and the Franco Parties. The Franco Parties appeal from the Circuit Court's Judgment.

9

DISCUSSION

I.

The Franco Parties argue that the Circuit Court erred in granting NIIC's motion for summary judgment. As explained below, we agree.

A.

We review a trial court's grant of summary judgment *de novo*, under the same standard applied by the trial court. Crichfield v. Grand Wailea Co., 93 Hawaiʻi 477, 482, 6 P.3d 349, 354 (2000). "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (block quote format and citation omitted); see HRCP Rule 56(c) (2000). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id. at 482-83, 6 P.3d at 354-55 (internal quotation marks and citation omitted).

In reviewing a trial court's grant of summary judgment, we must view the evidence in the light most favorable to the non-moving party. Id. at 483, 6 P.3d at 355. "In other words, 'we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.'" Id. (citation and brackets omitted). "[A]ny doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." GECC Fin. Corp. v. Jaffarian, 79 Hawaiʻi 516, 521, 904 P.2d 530, 535 (App. 1995).

B.

NIIC's obligations to an insured arise from the terms of its Policy. The duty to defend is broader than the duty to indemnify. Dairy Road Partners v. Island Ins. Co., 92 Hawaiʻi 398, 412, 992 P.2d 93, 107 (2000). The duty to defend arises "whenever there is the mere *potential* for coverage." Id. (internal quotation marks and citation omitted). The duty to

10

indemnify arises when an insured becomes legally obligated to pay damages in circumstances falling within the scope of the insurance policy. See id. at 413; 992 P.2d at 108; Regent Ins. Co. v. Strausser Enterprises Inc., 902 F.Supp.2d 628, 636-37 (E.D. Pa. 2012) ("The duty to indemnify arises only if it is established that the insured's [liability for the insured's conduct is] actually covered by the terms of the policy." (internal quotation marks, citation, ellipsis points, and brackets omitted)).

"[I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." Dairy Road, 92 Hawai'i at 411, 992 P.2d at 106 (internal quotation marks, brackets, and citation omitted). However, "because insurance policies are contracts of adhesion[,] . . . they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." Id. at 411-12, 992 P.2d 106-07 (internal quotation marks, citation, and brackets omitted).

C.

NIIC's Policy for the Truck provides that NIIC will "pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The Policy further provides that NIIC has "the right and duty to defend any suit asking for these damages. However, [NIIC has] no duty to defend suits for bodily injury or property damage not covered by this policy. [NIIC] may investigate and settle any claim or suit as NIIC consider[s] appropriate."

With respect to who is insured under the Policy, the Policy provides: "1. You are an insured for any covered auto. 2. Anyone else is an insured while using a covered auto you own, hire or borrow with a reasonable belief that such insured is entitled to do so . . . ."

11

In addition to their contract terms, "insurance policies are governed by statutory requirements in force and effect at the time such polices are written. Such provisions are read into each policy issued thereunder, and become a part of the contract with full binding effect upon each party." AIG Hawai'i Ins. Co. v. Vicente, 78 Hawai'i 249, 251, 891 P.2d 1041, 1043 (1995) (internal quotation marks, citation, and ellipsis points omitted).

The NIIC Policy's description of who constitutes an insured is generally consistent with HRS § 431:10C-301(a)(2)(2005), which provides, in relevant part:

> **Required motor vehicle policy coverage.** (a) An insurance policy covering a motor vehicle shall provide:
>
> . . . .
>
> (2)    Insurance to pay on behalf of the owner or <u>any operator of the insured motor vehicle using the motor vehicle with a reasonable belief that the person is entitled to operate the motor vehicle</u>, sums which the owner or operator may legally be obligated to pay for injury, death, or damage to property of others, except property owned by, being transported by, or in the charge of the insured, which arise out of the ownership, operation, maintenance, or use of the motor vehicle[.]

(Emphasis added.) Prior to its amendment in 1998, HRS § 431:10C-301(a)(2) required insurance coverage for any operator of the insured motor vehicle using the motor vehicle with "the express or implied permission of the named insured." See 1998 Haw. Sess. Laws Act 275, § 16 at 928. The 1998 amendment, which amended the statute to its present form, was enacted to clarify "that drivers using other people's vehicles, with a reasonable belief that the person has permission to use the vehicle, will not be in violation of the mandatory insurance requirement and will retain coverage in the event of an accident." Conf. Comm. Rep. No. 117, in 1998 House Journal, at 1000.

D.

The Franco Parties and NIIC basically agree that whether Reinhardt was covered as an insured under NICC's Policy turns on whether he drove the Truck with a reasonable belief that

he was entitled to operate the Truck when the fatal accident occurred.[6] As noted, the duty to defend is broader than the duty to indemnify. Dairy Road, 92 Hawai'i at 412, 992 P.2d at 107. In seeking summary judgment on its duty to defend, NIIC had the burden of proving that there was no genuine issue of material fact with respect to whether a possibility of coverage existed. Id. In other words, NIIC had the burden of proving that there was no genuine issue of material fact as to whether *it was possible* that Reinhardt had a reasonable belief that he was entitled to operate the Truck when the accident occurred. See id. In seeking summary judgment on its duty to indemnify, NIIC had the lower burden of proving the absence of a genuine issue of material fact with respect to whether coverage existed. Id. at 413, 992 P.2d at 108. In other words, NIIC had the burden of proving that there was no genuine issue of material fact as to whether Reinhardt had a reasonable belief that he was entitled to operate the Truck when the accident occurred. See id.

As explained below, we conclude that the Circuit Court erred in granting NIIC's motion for summary judgment because there were genuine issues of material fact regarding whether Reinhardt had a reasonable belief that he was entitled to operate the Truck when the accident occurred. Because NIIC failed to satisfy its lower summary judgment burden of proof regarding its duty to indemnify, it necessarily also failed to satisfy its higher burden regarding its duty to defend. We hold that the Circuit Court erred in granting NIIC's motion for summary judgment with respect to both its duty to defend and its duty to indemnify.

---

[6] As previously discussed, for purposes of its summary judgment motion, NIIC assumed that Reinhardt was driving the Truck when the fatal accident occurred. In addition, although the named insured on the policy was Cornelio, NIIC does not dispute that Reinhardt would qualify as an insured under the Policy if he had Kama's permission to drive the Truck, or he reasonably believed he was entitled to operate the Truck, at the time of the accident.

13

E.

Because the term "reasonableness" is inherently ambiguous and subject to differing interpretations, the question of reasonableness is "ordinarily for the trier of fact" and generally precludes summary judgment. Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 263, 141 P.3d 427, 436 (2006). "Where ambiguity exists, summary judgment is usually inappropriate because the determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable minds might differ." Id. (internal quotation marks, citation, and brackets omitted). "Reasonableness can only constitute a question of law suitable for summary judgment when the facts are undisputed and not fairly susceptible of divergent inferences," and upon all the evidence, only one inference may reasonably be drawn. Id. (internal quotation marks and citation omitted).

In granting summary judgment, the Circuit Court determined that given the evidence presented, there was only one inference that could be drawn, namely, that Reinhardt could not have reasonably believed that he was entitled to operate the Truck at the time of the accident. We disagree with the Circuit Court. We conclude that when viewed in the light most favorable to the Franco Parties, the evidence presented and the inferences drawn from such evidence raised genuine issues of material fact regarding whether Reinhardt reasonably believed he was entitled to operate the Truck.

NIIC and the Franco Parties agree that Reinhardt would be entitled to operate the Truck if he had the express or implied permission of Kama, the Truck's owner, to use the Truck when the accident occurred. Implied permission "may arise as a product of the present or past conduct of the insured, and the relationship between the parties, including the lack of any objection to the use by the permittee, which signifies acquiescence or consent of the insured." Vicente, 78 Hawai'i at 252, 891 P.2d at 1044 (internal quotation marks, citation, and brackets omitted). In opposing NIIC's motion for summary judgment, the Franco Parties

presented evidence that Kama and Reinhardt were in a girlfriend-boyfriend relationship at the time of the accident; that prior to the accident, Reinhardt had used the Truck on numerous occasions without Kama being present for purposes unrelated to work, such as personal errands, visits, "cruising around the neighborhood," or hanging out with friends at night; and that during the relevant period, Reinhardt was the primary user of the Truck. Viewed in the light most favorable to the Franco Parties, this evidence supports the inference that prior to the accident, Reinhardt generally had Kama's implied permission to use the Truck for his own personal purposes.

NIIC relies on Kama's deposition testimony to argue that on the night of the accident, Kama's permission was strictly limited to Reinhardt's dropping off his niece in Wailuku, checking on a car at his family's property, and then coming right back to Kama's residence. When Reinhardt told Kama he had to borrow the Truck to drop off his niece, Kama testified she said, "What you gonna use it for? 'Cause you dropping her off and that's it, bringing that truck right back[,]" but that she did not say anything else to him. Kama testified that Reinhardt later called her and told her he was going to check on a car on his family's property and then "be right back." When asked whether she told him on the night of the accident not to let anyone else borrow the Truck, Kama answered, "'Do what you gotta do, go drop off your niece and come right back. Nobody -- nobody else is to take that truck.' Every time he has come or used the truck, he is not to use -- let nobody use the truck."

While Kama's deposition testimony shows that she gave Reinhardt permission to use the Truck to drop off his niece and to go to his family's property to check on his car on the night of the accident, it does not clearly show that she prohibited him from using the Truck for any other purpose. Moreover, viewed in the context of their girlfriend-boyfriend relationship and Reinhardt's prior frequent use of the Truck for personal purposes, Kama's deposition testimony fails to establish that

Reinhardt did not reasonably believe that he could use the Truck for other purposes on the night of the accident.[1]

Significantly, Kama also testified that Reinhardt called at midnight, shortly before the accident, while she was sleeping, and told her he was going to stop at his family's property to check on his car and then be right back. Kama testified that in response, she said to Reinhardt, "Whatever," and then she "hung up, [and] went back to sleep." A reasonable inference from this evidence is that Kama was informing Reinhardt that she did not care what he did with the Truck -- that he could use the Truck for whatever purpose he wanted -- thereby negating any limitations she had previously imposed on his use that night. Such evidence would also support a reasonable belief by Reinhardt that he had Kama's permission to use the Truck at the time of the accident. The Circuit Court acknowledged that Kama's "whatever" statement to Reinhardt "could possibly be translated to a 'Yes, do whatever you want[.]'" However, the Circuit Court concluded that this statement and the evidence that Reinhardt had borrowed the Truck in the past was insufficient to "transform[] [Kama's] express limitations that evening into the implied permission to use the truck for unlimited purposes of going joyriding with Franco."

Under the applicable standards for summary judgment, which require us to view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion, we conclude that the Circuit Court erred in granting NIIC's motion for summary judgment. In opposing NIIC's motion for summary judgment, the Franco Parties presented evidence that Kama and Reinhardt were in a romantic relationship; that prior to

---

[1] We are also not persuaded by NIIC's reliance on Kama's statements that nobody besides Reinhardt had her permission to use the Truck and that the Truck's primary purpose was for work. Our analysis focuses on whether Reinhardt reasonably believed he was entitled to operate the Truck, and thus whether someone besides Reinhardt had permission to use the Truck is not directly relevant. That the primary purpose of the Truck was for work also misses the mark as the evidence showed that Reinhardt as well as Kama used the Truck outside of work.

the accident, Kama had given Reinhardt implied permission to routinely use the Truck for his own personal purposes; and that on the night of the accident, Kama gave Reinhardt permission to use the truck for particular purposes, and then subsequently responded "Whatever" when Reinhardt said he would be going to his family's property to check on his car before returning with the Truck. Viewing the evidence in the appropriate light, we conclude that the Franco Parties presented sufficient evidence to raise genuine issues of material fact regarding whether Reinhardt reasonably believed he was entitled to operate the Truck at the time of the fatal accident. Accordingly, NIIC was not entitled to summary judgment on its complaint for declaratory relief.

## II.

The Franco Parties contend that the Circuit Court erred in denying their Motion for Reconsideration. In light of our decision to vacate the Circuit Court grant of NIIC's motion for summary judgment, we need not address the Franco Parties' claim of error regarding the denial of their Motion for Reconsideration.

## III.

The Franco Parties filed a motion for summary judgment arguing that NIIC was equitably estopped from denying coverage for Reinhardt because it accepted and controlled Reinhardt's defense in the Wrongful Death Action without a timely reservation of rights and used information obtained thought its defense of Reinhardt to deny coverage. The Franco Parties argue that the Circuit Court erred in denying their motion as moot, without addressing the merits of the motion.

The exact basis for the Circuit Court's decision to deny the Franco Parties' motion for summary judgment is not clear. In stating that it was denying the motion, the Circuit Court referred to the parties' pleadings and arguments on the Franco Parties' motion, but it also referred "as well" to its earlier decision to grant NIIC's motion for summary judgment and its belief that this rendered moot the Franco Parties' motion for

17

summary judgment. The Circuit Court's granting of NIIC's motion for summary judgment did not render the Franco Parties' motion moot, and thus the Circuit Court erred to the extent it relied upon the ground of mootness to deny the Franco Parties' motion. In any event, our decision to vacate the Circuit Court's granting of NIIC's summary judgment motion invalidates the Circuit Court's reliance on its grant of summary judgment to deny the Franco Parties' motion.

The Franco Parties' equitable estoppel claim was based on its contention that NIIC accepted and controlled Reinhardt's defense in the Wrongful Death Action without a timely reservation of rights, which resulted in prejudice to Reinhardt. However, "[a]n insurance company . . . may initially assume the unconditional defense of an insured while it performs its own reasonable investigation to determine whether coverage exists[,]" without being estopped to deny coverage, if it promptly serves a reservation of rights on the insured once it receives information concerning the possible absence of coverage. AIG Hawai'i Ins. Co. v. Smith, 78 Hawai'i 174, 177-78, 891 P.2d 261, 264-65 (1995). In addition, absent manifest injustice, to invoke the doctrine of equitable estoppel, an insured must show that "he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable." Id. at 179, 891 P.2d at 266 (internal quotation marks and citation omitted).

Based on our review of the record available to the Circuit Court at the time it decided the Franco Parties' motion for summary judgment, there were genuine issues of material fact concerning the Franco Parties' equitable estoppel claim. Accordingly, we conclude that the Circuit Court did not err in denying the Franco Parties' summary judgment motion.

IV.

The Franco Parties contend that the Circuit Court erred in failing to set aside the defaults entered against Reinhardt and Cornelio; failing to grant the Franco Parties' Motion to

18

Compel Discovery; and denying the Franco Parties' Motion to Depose Reinhardt. The Circuit Court did not render a decision on the Franco Parties' motion to set aside the defaults entered against Reinhardt and Cornelio and their Motion to Compel Discovery.[8] This was perhaps because the Circuit Court believed that deciding these motions was unnecessary given its decision to grant NIIC's motion for summary judgment. The Circuit Court's denial of the Franco Parties' Motion to Depose Reinhardt may also have been based on its determination that its grant of NIIC's summary judgment motion rendered further discovery unnecessary. We decline to address the Franco Parties' claims of error on these matters and instead direct the Circuit Court, on remand, (1) to render a decision in the first instance on the Franco Parties' motion to set aside the defaults and Motion to Compel Discovery; and (2) to reconsider the Franco Parties' Motion to Depose Reinhardt in light of our decision to vacate its grant of summary judgment in favor of NIIC.

CONCLUSION

Based on the foregoing, we vacate the Circuit Court's Judgment, and we remand the case for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawaiʻi, March 31, 2017.

On the briefs:

Sue V. Hansen
for Defendants/Intervenors/
Appellants.

Gregory K. Markham
(Chee Markham & Feldman)
for Plaintiff-Appellee.

*Craig H. Nakamura*
Chief Judge

*Alexa D. M. Fujise*
Associate Judge

*Lawrence M. Reifurth*
Associate Judge

---

[8] The Franco Parties contend that the Circuit Court's failure to rule on its Motion to Compel Discovery constituted a "deemed denial" of its motion under Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 4(a)(3) (2012). However, the "deemed denial" provision of HRAP Rule 4(a)(3) cited by the Franco Parties only applies to certain types of motions, and a motion to compel discovery is not one of the included motions.

19